**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CONNIE M. CARRASCO | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  04-1166-MLB |
| | ) | |
| THE BOEING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion for summary judgment.  (Doc. 30)  The motion has been fully briefed, and is ripe for decision.  (Docs. 31, 36, 38.)  Plaintiff claims that one of defendant's employees subjected her to sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.  (Doc. 27, Pretrial Order (PTO) at 5.)  She also claims that defendant retaliated against her when she complained about the harassing behavior.  Id. at 5-6.  Defendant's motion is GRANTED for reasons set forth herein.

**I.   SUMMARY JUDGMENT STANDARD: FRCP 56**

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc.,

144 F.3d 664, 670 (10th Cir. 1998). In determining whether a genuine issue of material fact exists, the court "view[s] the evidence in a light most favorable to the non-moving party." Qwest Corp. v. City of Santa Fe, N.M., 380 F.3d 1258, 1265 (10th Cir. 2004) (quotation omitted). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

## II. FACTS

As an initial matter, the parties dispute the relevant time period for events that occurred in this case. Plaintiff wants to refer to events that occurred as far back as the late 1980s, while defendant argues that this dispute involves only incidents that occurred between June 2001 and June 14, 2002. (Docs. 31 at 4; 36 at 7.) In her complaint, plaintiff stated that "[f]rom June 2001 to June 14, 2002, Ms. Carrasco was subject to harassment from a male supervisor against whom she had filed grievances concerning sexual harassment." (Doc. 1 at 2.) More importantly, she repeated this statement verbatim in the pretrial order. (PTO at 3.) Nowhere else, either in her complaint or in the pretrial order, has she ever indicated that she was complaining of behavior that occurred outside this time frame.

Neither has she mentioned at any point, not even in her response

to this motion, an intent to bring in evidence of prior activity related to a hostile work environment under the rules fashioned in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117-18, 122 S. Ct. 2061, 2074-75, 153 L. Ed. 2d 106 (2002). While Morgan dealt with a challenge to the 300-day limitations period for filing charges with the EEOC, it also made clear that a claim of hostile work environment could be supported with evidence of harassing behavior outside the limitations period, if it was all part of a continuing pattern of harassment. Id. However, the plaintiff in Morgan claimed that he had been subjected to harassment since the day he was hired. Id. at 104, 122 S. Ct. at 2067-68. Hence, his complaint encompassed harassing activity that occurred up to four years beyond the 300-day limitations period. See id. at 106 n.1, 122 S. Ct. at 2069.

By contrast, plaintiff has repeatedly limited her claim to the period from June 2001 to June 14, 2002. Once a pretrial order is filed, it controls the subsequent course of the action. Fed. R. Civ. P. 16(e); see also Wilson v. Muckala, 303 F.3d 1207, 1215-16 (10th Cir. 2002) (noting that "the purpose of Rule 16 is to replace 'the old sporting theory of justice' with a policy of 'putting the cards on the table.'" (citation omitted)). Having repeatedly led the court and opposing counsel to believe that her claims are limited to the time period of June 2001 to June 14, 2002, this is the time frame to which plaintiff will be bound.

Defendant employed plaintiff as a painter, polisher, and in various other roles from 1987 until June 2002. For much of the time plaintiff was employed at Boeing, she worked under the supervision of James Hans. During the relevant time period, Hans was plaintiff's

"second-level manager," which means that plaintiff worked under a "first-level manager" who reported to Hans. (Docs. 31 at 2, 4-5; 36 at 6, 8.)

Plaintiff claims that, during the summer of 2001, Hans approached her at work and suggested that her shorts failed to comply with defendant's dress code in that they were too short.[1] Hans allegedly stated, "I need to measure your shorts from the inside of your thigh." (PTO at 3; Doc. 31 at 6.) Plaintiff responded that Hans had better have someone in the personnel department measure her shorts. No measurement was ever taken. (Docs. 31 at 6; 36 at 8.)

Later that summer or into the fall, Hans asked two or three times, "What color is your thong? Can I see it?" (PTO at 4; Doc. 31 at 7.) Plaintiff rejected these requests, generally responding, "Whatever, Jim." (Doc. 31 at 7.) Also, during this same time frame, Hans asked plaintiff, "Do you tan naked or do you have tan lines and can I see for myself?" (PTO at 4; Doc. 31 at 7.) Plaintiff rebuffed Hans, saying, "I don't have tan lines, there's nothing for you to see, Jim." (Docs. 31 at 7.) Finally, for the last instance of harassing activity during the summer of 2001, plaintiff claims that Hans leaned over her back and whispered that her haircut was cute. (Docs. 31 at 7; 36 at 8.)

In addition to these specific incidents, plaintiff claims that Hans engaged in more generalized patterns of unlawful behavior. She asserts that, in addition to the specific instance cited above, Hans commented every time she got her hair cut. She also claims that he

---

[1] Neither party provided evidence of the actual dress code provision, if any, at issue in this alleged incident.

-4-

followed her around the workplace and scrutinized her work. (Docs. 31 at 7, 9; 36 at 10, 14.)

Hans' objectional behavior appeared to wane in late 2001 and early 2002. However, in April 2002, Hans approached plaintiff while she was washing parts and inquired why she was not nice to him and why she did not smile at him. Plaintiff responded by saying, "What do you want me to say, I love you?" (Doc. 31 at 7.) Hans replied, "No," and walked away. Id. Although the incident was over, Hans' response to it was not. He informed defendant's personnel department that plaintiff claimed she loved him. The complaint was referred to defendant's equal opportunity office for investigation. Id. at 7-8; (Doc. 36 at 8.)

Mary Avila was assigned to investigate the claim. On May 7, 2002, she interviewed plaintiff regarding Hans' allegations. Plaintiff declined to talk about her own complaints until she consulted with an attorney and the Kansas Human Rights Commission (KHRC). Having apparently done so, plaintiff spoke with Avila on May 8, informing her that Hans had been harassing her since 1988. Plaintiff also explained that Hans had twisted her words from the April 2002 incident to make it look like she was pursuing him. Based on plaintiff's allegations, defendant initiated another investigation regarding Hans' behavior toward her. Ultimately, defendant concluded that plaintiff's claims lacked merit. Plaintiff counters that defendant's investigation was sloppy and incomplete. Plaintiff subsequently filed a complaint with the KHRC. That complaint was dismissed after plaintiff filed the present action. (Docs. 31 at 8, 11; 36 exh. 5 at 8-9, 11, 13, exh. 9.)

In late 2001 and into 2002 defendant reduced its workforce by more than one-third.  On June 10, 2002, plaintiff received notice that she was being downgraded from a grade 6 Polisher to a grade 3 Painter position.  As part of this downgrade, plaintiff requested to be moved out from under Hans' supervision.  When informed that Hans would not allow that to happen, plaintiff declined the downgrade and accepted an accelerated layoff, which provided her with a severance package, but terminated any rights she had to be recalled to work.  (Docs. 31 at 3, 36 at 6-7.)

Plaintiff filed her initial complaint information sheet with the KHRC on July 9, 2002.  That sheet unequivocally expressed her intent to file a claim for sexual harassment.  The formal charge was filed on August 7, 2002.  However, when the KHRC drafted the charge, only the box marked "RETALIATION" was checked; the box entitled "SEX" was not checked. After further review, the KHRC decided to recommend that plaintiff file an amended complaint charging both sexual harassment and retaliation.  The amended complaint was filed on February 18, 2004, almost twenty months after her employment with defendant was terminated.  This complaint was ultimately dismissed after plaintiff filed the present action.  (Docs. 31 at 3, 9-11, exh. 7, exh. 8; 36 at 9, exh. 6.)

### III.  ANALYSIS

A.  Hostile Work Environment

Defendant first asserts that plaintiff's hostile work environment claim is time-barred by 42 U.S.C. § 2000e-5(e)(1) because she failed to file that charge with the Equal Employment Opportunity Commission (EEOC) or the KHRC within 300 days of the unlawful act.  (Doc. 31 at

-6-

14.)  Indeed, "[t]his filing is a prerequisite to a civil suit under [Title VII]."  <u>Bullington v. United Air Lines, Inc.</u>, 186 F.3d 1301, 1310 (10th Cir. 1999).  Although defendant correctly notes that failure to exhaust administrative remedies for a Title VII claim deprives the court of subject matter jurisdiction, <u>McBride v. CITGO Petroleum Corp.</u>, 281 F.3d 1099, 1106 (10th Cir. 2002), failure to <u>timely</u> exhaust administrative remedies "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (10th Cir. 1982).  It is undisputed that plaintiff ultimately amended her formal complaint with the KHRC to include charges of both retaliation and sexual harassment.  (Doc. 31 at 11.)  Likewise, it is clear that defendant failed to adequately address the timeliness issues in its briefs.  Nonetheless, the court need not resolve the issue on this basis.  Plaintiff counters defendant's assertions, not by addressing the difference between failure to exhaust and failure to timely exhaust, but by asserting that her original correspondence with the KHRC properly identified her complaint as both retaliation and sexual harassment.  Thus, she argues, any error in reducing that correspondence to a formal complaint is attributable to the KHRC and should not prejudice her claim.  (Doc. 36 at 18-22.)

A charge of discrimination is "minimally sufficient" if it "identifies the type of discrimination complained of, the alleged harasser, and an approximate time period [in which the harassment occurred]."  <u>Gunnell v. Utah Valley State Coll.</u>, 152 F.3d 1253, 1260

-7-

(10th Cir. 1998). Defendant contends that plaintiff's original charge filed with KHRC fails to satisfy these requirements because it only alleged retaliation, not sexual harassment. (Doc. 31 at 14-15.) In the KHRC complaint, plaintiff checked the box marked "RETALIATION," but not the box marked "SEX." Id. exh. 7 at 1. "Although her failure to mark the box for sex discrimination is not dispositive, . . . it certainly creates a presumption that she was not asserting claims represented by boxes not checked." Gunnell, 152 F.3d at 1260. Plaintiff bears the burden of rebutting that presumption. See id.

Looking to the narrative portion of her KHRC complaint, it states:

> From June 2001, to June 14, 2002, I was subjected to harassment from a male supervisor whom I have filed grievances against concerning sexual harassment. The harassment consisted of having my work more closely scrutinized, being subjected to an unwarranted reprimand, and being subjected to being followed and taunted. Although I reported the harassment to upper management, nothing was done to effectively stop it.

(Doc. 34 exh. 7 at 1.) The court finds that this language creates a great deal of confusion as to what was being charged. While plaintiff checked the box for retaliation, that word is not used anywhere in this narrative. Instead, the charge speaks only in terms of "harassment" and "sexual harassment." Id. Ordinarily, such ambiguity would weigh against the party bearing the burden of proof. In this instance, that would be plaintiff, who bears the burden of rebutting the Gunnell presumption that she intended to charge only retaliation because that is the only box she checked on the complaint. On the other hand, plaintiff points out that this charge was drafted by the KHRC based on her KHRC Complaint Information Sheet, (Doc. 36 exh. 6),

-8-

which she personally completed. (Doc. 36 at 20-21.) Plaintiff argues that she clearly indicated to the KHRC in her information sheet that this was a sexual harassment complaint, and that she reasonably relied on the KHRC's expertise in drafting the complaint. Id.

Several cases from the District of Kansas that have faced this question have relied on the Tenth Circuit's unpublished decision in Welsh v. City of Shawnee, 1999 WL 345597 (10th Cir. June 1, 1999). See, e.g., McCall v. Board of Com'rs of County of Shawnee, Kan., 291 F. Supp. 2d 1216, 1223 (D. Kan. 2003); Bland v. Kan. City, Kan. Community College, 271 F. Supp. 2d 1280, 1284 (D. Kan. 2003); Terrell v. McGuire, 2003 WL 22213132, at *3 (D. Kan. Aug. 27, 2003). In Welsh, a Title VII plaintiff attempted to rely on her EEOC intake questionnaire to overcome deficiencies in her formal EEOC complaint. Id. at *4. There, the court explained,

> [T]he formal charge is the key document in getting the Title VII process rolling. By statute and regulation, it must be in writing and signed under oath or affirmation, see 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.9, and it must describe the practices complained of, see id. § 1601.12(b). It therefore is the primary, and usually the only, place to which courts look to determine whether a plaintiff timely and properly exhausted her claims before the EEOC. Because it is the only document that must be sent to the charged party, it is the only document that can satisfy the notice requirement. Nonetheless, relevant to Welsh's contentions, our sister circuits in two related situations have considered documents submitted to the EEOC other than the charge in determining whether claims have been adequately presented to the EEOC.
> First, "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." Cheek [v. W. & S. Life Ins. Co.], 31 F.3d [497,] 502 [7th Cir. 1994]. Second, plaintiffs should not be penalized for the EEOC's negligence in handling

-9-

> a claim.  Cf. Diez v. Minn. Mining and Mfg. Co., 88 F.3d 672, 677 (8th Cir. 1996) (indicating that EEOC negligence in handling ADEA claim under similar statutory filing scheme could excuse failure to file formal charge timely); Philbin [v. Gen. Elec. Capital Auto Lease, Inc.], 929 F.2d [321,] 325 [7th Cir. 1991] ("EEOC's inaction in completing and forwarding the formal charge in a timely fashion should not bar the plaintiff from proceeding on her Title VII claim.").  Both of these situations require a plaintiff to demonstrate that she intended that the EEOC investigate the allegations not included in the formal charge.

Id. at *5.  In determining plaintiff's intent, the court may consider, among other things, the contents of the information sheet, the contents of the charge, and whether it was readily apparent from the formal complaint that the sexual harassment claim had been omitted. See id.

Here, the initial complaint information sheet filed with the KHRC shows that plaintiff unequivocally charged defendant with unlawful discrimination based on "[s]ex."  Id. exh. 6 at 2 ¶ 3.  Likewise, in paragraph 16 of that complaint information sheet, plaintiff explained that she believed she had been discriminated against on the basis of sex because "[t]he man wanted me to have an affair with him and I said no, then he tried to punish me."  Continuing in the next paragraph of her complaint sheet, she identified the following statements as revealing sexual bias against her: "Will you be my mistress[?]  We [sic] you go to a motel with me.  God you always smell so good.  I love your haircut.  I love your tiny feet."

For totally inexplicable reasons, when the KHRC drafted her complaint, only the box marked "RETALIATION" was checked. Nonetheless, a review of the complaint's narrative section would not

-10-

have placed plaintiff, who was not then represented by an attorney, (Doc. 36 at 20), on notice that her claims of sexual harassment were being omitted. Indeed, the narrative section of the charge speaks exclusively in terms of "harassment" and "sexual harassment." The word retaliation is never used in that description of the charge.

Under these circumstances, the court concludes that plaintiff intended for the KHRC to investigate her claims of sexual harassment; that but for the KHRC's negligence or incompetence in drafting the charge, the sexual harassment claim would have been clearly presented in the formal complaint; and, that because the KHRC chose to use only the words "harassment" and "sexual harassment" in the narrative section of the charge, rather than "retaliation," it was not obvious to plaintiff, a layperson, that this had the legal effect of omitting the claims of sexual harassment she had so clearly included in her complaint information sheet.

Moreover, one of the main purposes of the administrative charge is to give defendant notice of the claimed abuses, and an opportunity to resolve the matter without litigation. See Welsh, 1999 WL 345597, at *2. The facts show that plaintiff clearly indicated in her initial complaint to defendant that she was objecting to sexual harassment. The initial questionnaire filled out by Mary Avila shows that this was reported as a sexual harassment complaint. (Doc. 36 exh. 5 at 1 ¶ B.) The second page of that questionnaire specifically quotes plaintiff as saying, "Jim Hans has been sexually harassing me since 1988 or 1989." Id. at 2. Thus, it is hardly a surprise to defendant that plaintiff is asserting a claim of sexual harassment in this lawsuit. For these reasons, the court finds that plaintiff has exhausted her

administrative remedies and her claim may be heard on the merits.

To establish a prima facie case of hostile work environment sexual harassment under Title VII, plaintiff must show that: (1) she is a member of a protected class; (2) the conduct in question was unwelcome; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (5) there is some basis for imputing liability to the employer. Morton v. Steven Ford-Mercury of Augusta, Inc., 162 F. Supp. 2d 1228, 1238 (D. Kan. 2001)(citing Rahn v. Junction City Foundry, Inc., 152 F. Supp. 2d 1249, 1256 (D. Kan. 2001)). Moreover, in order to be actionable, harassing activity must be so severe and pervasive as to change the terms and conditions of employment or create an abusive working environment. Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998).

As stated in Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993) and Turnbull v. Topeka State Hosp., 255 F.3d 1238, 1243 (10th Cir. 2001), there is no "mathematically precise test" for determining when conduct is sufficiently severe or pervasive to trigger Title VII liability. Some factors to be weighed include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; Turnbull, 255 F.3d at 1243. Because frequency is merely one factor in the analysis, an isolated incident may suffice if the conduct is severe and threatening. See Turnbull, 255 F.3d at 1243-44 (approving jury's finding that plaintiff was subjected to a sexually hostile work environment while working at a state mental

hospital, even though plaintiff was subjected to a single sexual assault); see also Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1068 (10th Cir. 1998)(allowing claim based on one sufficiently severe incident).  For the conduct to be actionable, however, it must be "both objectively and subjectively abusive."  Turnbull, 255 F.3d at 1243 (quoting Lockard, 162 F.3d at 1071).

For purposes of this motion, defendant concedes all elements of the prima facie case except the fourth - that the alleged harassment was sufficiently severe or pervasive to create an abusive working environment.  (Doc. 31 at 17.)  Plaintiff counters that the issue of severity is almost exclusively a jury question, inappropriate for resolution on summary judgment.  (Doc. 36 at 17-18.)  While that may frequently be the case, there is some Tenth Circuit case law that helps define the contours of the severity or pervasiveness required to avoid summary judgment.

At one end of the spectrum, in Harrison v. Eddy Potash, Inc., 248 F.3d 1014, 1023 (10th Cir. 2001), the court had no problem concluding that when a male supervisor forced a female subordinate to masturbate him several times over a seven week period, the conduct was sufficiently severe and pervasive to warrant summary judgment in plaintiff's favor.  Likewise, in Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 782-83 (10th Cir. 1995), the court found the severity and pervasiveness prong satisfied where a co-worker propositioned virtually every female with whom he came in contact, including plaintiff, and he ultimately grabbed plaintiff between the legs and attempted to touch her breasts. Similarly, the Tenth Circuit has consistently found that a single instance of sexual assault is

sufficient to satisfy the severity prong of a hostile work environment claim. See, e.g., Turnbull, 255 F.3d at 1243-44; Lockard, 162 F.3d at 1072. By contrast, no assault is alleged in this case. Rather, this claim is based on a handful of sexually suggestive comments. (PTO at 3-4.)

The court finds Penry more in line with the facts of this case. In Penry, the plaintiffs had been subjected to at least the following objectional conduct: on business trips, the supervisor would reserve only one room and give hotel employees the impression that he was sharing the room with one of the plaintiffs, leaving her to sort out the confusion; asking plaintiff whether women have wet dreams; asking plaintiff what she was wearing under her dress; taking plaintiffs to a Hooters restaurant during business travel; insisting that plaintiff perform her work in his hotel room while on business travel; commenting that the roof of a particular mall looked like a woman's breasts, and referring to the mall as the "bra bazaar" and the "boobs up mall," Gillum v. Fed. Home Loan Bank of Topeka, 970 F. Supp. 843, 850 (D. Kan. 1997); while at dinner with plaintiff, ordering drinks called "sex on the beach" and "cum in a hot tub," id.; informing plaintiff that her bra strap was showing, but then intimating that he liked it that way; telling another male employee, within earshot of plaintiff, that one of the plaintiffs "allowed him to get in her drawers anytime," Penry, 155 F.2d at 1260; routinely following plaintiffs to the restroom, and staring at them while they worked; and, frequent unwelcome touching. Penry, 155 F.3d at 1260-61. Despite this laundry list of misbehavior, the Tenth Circuit concluded that it was not severe or pervasive enough to survive summary

judgment.  Id. at 1263.

Similarly, in Sprague v. Thorn Americas, Inc., 129 F.3d 1355 (10th Cir. 1997), the circuit court found that a supervisor's conduct was not sufficiently severe or pervasive to support a hostile work environment claim when he told plaintiff that she needed to undo her top button; openly discussed PMS and its effect on women's behavior; unabashedly looked down plaintiff's dress at her wedding reception, then commented that "you got to get it when you can;" and commented that the term "neck chains" (referring to jewelry) sounds "kind of kinky." Id. at 1366. In another case similar to the case at bar, the court found that when, "within a seven-month period, [plaintiff] encountered some 15 to 18 incidents of unwanted touching (hand-holding and two kisses), three offers for an affair, one inappropriate comment about her bra, an unfriendly atmosphere at work, and a one-day suspension," this conduct was not severe or pervasive enough to survive summary judgment. Metzger v. City of Leawood, 144 F. Supp. 2d 1225, 1250 (D. Kan. 2001).

With that as a background, the court now turns to the factors that must be considered to determine whether the allegedly harassing conduct was either severe or pervasive enough to establish a claim of hostile work environment. During the relevant time period, Hans made four or five inappropriate comments to plaintiff: 1) he suggested her shorts were too short and offered to measure them from the inside of plaintiff's thigh; 2) two or three times he asked to see her thong; and 3) he asked if she tanned naked, and if he could see her tan lines. In addition, he leaned over her back and whispered that her haircut was cute. All these incidents occurred during the summer and

-15-

fall of 2001. That suggests a frequency of one incident every month or so for a five- to six-month period. There was nothing physically threatening about these statements; rather, they were requests that were denied, after which Hans walked away. Likewise, there is no evidence that these comments were made openly in front of others such that plaintiff was humiliated by the remarks. Finally, there is little evidence that these occasional comments had an impact on plaintiff's work performance. Hans was two-levels above her in the supervisory chain, thus she did not report directly to him. The evidence shows that she rebuffed his advances and continued with her work. While she might have argued that Hans' allegedly false claims to defendant's personnel office and his refusal to allow her to transfer out from under his authority might have affected her job performance, she chose not to include that within the scope of her hostile work environment claim. (PTO at 3-4.)

In comparing the present case with Sprague, Penry, and Metzger, the court finds the harassing conduct in Sprague to be most similar in severity and pervasiveness to the present matter. Additionally, the court concludes that the conduct in Penry and Metzger was substantially more severe or pervasive that the comments of which plaintiff now complains. Since the conduct in Penry and Metzger was insufficient to establish a hostile work environment, the court concludes that the conduct of which plaintiff complains was not severe or pervasive enough to be actionable under Title VII. Accordingly, defendant's motion for summary judgment on this claim is GRANTED.

B.  Retaliation

Plaintiff also presented a claim for retaliation in her complaint

and in the pretrial order.  However, defendant argues that plaintiff has abandoned this claim because she repudiated it in her response brief.  (Doc. 38 at 3.)  Indeed, in paragraph 29 of defendant's statement of uncontroverted facts, defendant contends that

> [w]hile plaintiff claimed in her deposition that Boeing retaliated against her by laying her off because she complained to EO/WD, she did not include this claim in the Pretrial Order. Plaintiff testified that she was not claiming Boeing took any action against her because she complained except for her layoff.

(Doc. 31 at 8-9 (citations omitted).)  In response to this paragraph, plaintiff said,

> Carrasco is not alleging that she was laid-off because she filed a complaint for sexual harassment against Hans.  She has asserted a claim for sexual harassment and after reporting such harassment to Boeing, the defendant refused to take any action and as a result she was <u>constructively discharged</u> from her job because no reasonable person could tolerate her continuing working conditions.

(Doc. 38 at 9 (emphasis added).)  Here, plaintiff expressly disavows any retaliation.  Instead, she tries to bootstrap her retaliation claim into one for constructive discharge.  Her intent to shift theories from retaliation to constructive discharge is further clarified when she argues solely for constructive discharge, and makes no mention of retaliation, in the remainder of her brief.  <u>Id.</u> at 22-23.

Once a pretrial order is entered, it controls the subsequent course of the case.  Fed. R. Civ. P. 16(e).  Claims not included in the pretrial order are deemed abandoned.  <u>Wilson v. Muckala</u>, 303 F.3d at 1215.  Plaintiff specified in the pretrial order that she was claiming sexual harassment and retaliation.  (PTO at 5-6.)  There is

-17-

no mention of a claim for constructive discharge.

Plaintiff states in her response brief that paragraph 5A of the pretrial order contains her claim for constructive discharge. The court rejects that suggestion. This paragraph speaks only in terms of sexual harassment and retaliation. Furthermore, in the section of the pretrial order designated "Theories of Recovery," plaintiff set forth the elements of a retaliation claim, which are distinctly different from the elements of a constructive discharge claim.[2] (PTO at 5-6.) Accordingly, the court finds that the constructive discharge claim is not properly before the court, and the retaliation claim has been abandoned. Moreover, even if the retaliation was not technically abandoned, plaintiff failed to argue that she had presented evidence to establish a prima facie case of retaliation. The court will not marshal the evidence for her. See Cuenca v. Univ. of Kan., 2004 WL 1328676, *1 (10th Cir. June 15, 2004) ("Notwithstanding the limited number of specific, fact-based arguments he presents, Cuenca apparently wishes us either to perform his task of applying the law to the facts, or—worse yet—to comb the entire record and to refine his arguments concerning the incidents he described in his voluminous submissions to the district court. This we will not do." (emphasis

---

[2] "A constructive discharge occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit," Tran v. Trs. of State Colls. in Colo., 355 F.3d 1263, 1270 (10th Cir. 2004), whereas "[i]n order to establish a prima facie case of retaliation, [plaintiff] must show (1) she engaged in protected opposition to discrimination; (2) [defendant] took an adverse employment action against her; and (3) a causal connection between the protected activity and the adverse action." Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1267 (10th Cir. 2005). These claims have entirely different elements, and are clearly distinct.

-18-

added)). Therefore, defendant's motion for summary judgment is GRANTED as to the retaliation claim.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this ___9th___ day of May 2005, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE